UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**DEONTAE GORDON,**

      **Petitioner,**

                                        Case No. 5:04-CV-42
v.                                        Hon. Gordon J. Quist

**BLAINE C. LAFLER,**

      **Respondent.**

_____/

**REPORT AND RECOMMENDATION**

Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254.

**I.    Background**

Petitioner was arrested as a suspect in the shooting death of Clayton Roberts in Grand Rapids. The victim was found dead on the morning of July 28, 1999 having been shot six times in the head at close range. Trial Trans. IV at 85, 90. The jury convicted petitioner of second-degree murder, M.C.L. § 750.317, and possession of firearm during the commission of a felony M.C.L. § 769.10. Defendant was sentenced, as a habitual offender, to 33 to 100 years' imprisonment for the conviction of second-degree murder, consecutive to the mandatory two-year term of imprisonment for the felony-firearm conviction. Petitioner raised the following issues to the Michigan Court of Appeals:

    I.    A.    Did defendant's suggestive pre-trial identification violate his right to due process under the United States and Michigan Constitutions and any subsequent in-court identification was tainted as fruit of the poisonous tree?

        B.      Was defendant denied his right to counsel at a pre-custody photographic lineup, where the witness had previously selected his photograph as "more like" the suspect, where he was the only suspect in the case was [sic] readily available for a corporeal lineup and the clear intent of the photographic lineup was to build a case against him?

        C.      Did counsel made a serious mistake that denied defendant effective assistance of counsel in failing to demand an evidentiary hearing on a motion to suppress the identification of the defendant?

   II.     Did the prosecution fail to produce sufficient evidence at trial to sustain a jury verdict, finding defendant guilty beyond a reasonable doubt of the crime of second-degree murder and felony firearm?

   III.    Did the trial court err where it denied defendant's timely motion for resentencing that properly preserved a guidelines scoring issue, recalculated several offense variables and reaffirmed his 33-100 year sentence for second degree murder, without a hearing.

The Michigan Court of Appeals affirmed petitioner's conviction. *People v. Gordon*, No. 227620 (Mich. App. March 12, 2002). Petitioner raised the following issues in an application for leave to appeal to the Michigan Supreme Court,

   I.      Was defendant denied effective assistance of counsel because (A) Counsel did nothing to suppress the eyewitness identification and testimony, (B) No expert opinion on flaws and errors in eyewitness testimony in general and cross, racial identification in particular was offered, (C) No special instruction on cross racial identification was sought, and (D) It was defense counsel who caused the witness to become "positive" of her identification for the first time in trial?

   II.     Do the inherent flaws and errors and eyewitness identification in general and cross racial identification in particular require a special cautionary instruction as a matter of public policy and to ensure fundamentally fair trials, especially when there is only one eyewitness identification placing a defendant at the scene of the crime?

   III.    Did the trial court erred where it denied defendant's timely motion for re-sentencing that properly preserved a guidelines scoring issue, recalculated several offense variables and reaffirmed his 33-100 year sentence for second degree murder, without a hearing.

The Michigan Supreme Court denied petitioner's application for leave to appeal. *People v. Gordon*,

No. 121479 (Mich. Dec. 30, 2002).

Petitioner submitted a petition for writ of habeas corpus on March 29, 2004. The petition contained unexhausted claims and therefore was not in accordance with 28 U.S.C. § 2254(b)(1). On April 14, 2004, this court issued an Order to Show Cause why this action should not be dismissed without prejudice for lack of exhaustion. Petitioner moved to stay proceedings pending exhaustion of state court remedies, which the court granted on July 8, 2004. Petitioner's attorney attempted to exhaust the claims by filing a motion for relief from judgment in the trial court, but he abandoned the exhaustion attempt. The court subsequently allowed petitioner to amend his petition to pursue only the exhausted claims. *See* docket nos. 11 and 12.

Petitioner filed an amended petition raising the following two exhausted habeas claims:

>   I.   Ineffective Assistance of Counsel.
>   II.  Sentencing Issue.

Amend. Petition (docket no. 13).

### II.   Standard of Review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254 which provides that a federal district judge "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996, which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–

>    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Federal law if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided the case differently than a Supreme Court decision based upon a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *Lopez v. Wilson*, 426 F.3d 339, 342 (6th Cir. 2005) (*rehearing en banc*). An unreasonable application of clearly established Federal law occurs "when the state court identified the correct legal principle from the Supreme Court but unreasonably applied the principle to the facts of the case before it." *Lopez*, 426 F.3d at 342.

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001).

### III. Exhaustion

Before a state prisoner may seek habeas relief in federal court, he must first fairly present the substance of his federal claims to all available state courts, thereby exhausting all state remedies. *Picard v. Connor*, 404 U.S. 270 (1971); *Clemmons v. Sowders,* 34 F.3d 352, 354 (6th Cir. 1994); *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994). Petitioner raised his two federal habeas corpus claims to both the Michigan Court of Appeals and the Michigan Supreme Court.

Accordingly, petitioner has exhausted both of his habeas claims.

### IV. Petitioner's habeas corpus claims

#### A. Ineffective assistance of counsel

First, petitioner contends that his trial counsel was ineffective, for failing to contest the eyewitness testimony of Ms. Allison Crowe. In petitioner's words:

> Ms. Allison Crowe is the only eyewitness who tied defendant to the crime, she admitted that she reported to the police that the person was 5'9" - 6' feet, 140 lbs skinny, VERY DARK COMPLEXION (emphasis added) when asked about defendants complexion she said defendant was NOT VERY DARK. In photo array she identified the defendant as looking most like the person she seen outside the victims car. In Prosecution brief to "COA" it states "in fact the witness made only a tentative identification even after reviewing the photo array. Brief at 5 (emphasis added Ms. Crowe was far from certain that defendant was the individual she had seen."

Amended Petition at 6.

The Michigan Court of Appeals addressed petitioner's claim as follows:

> Defendant initially asserts that the pretrial identification procedures violated his right to due process because the photographic lineup was "unduly suggestive." We disagree.
>
> We begin by pointing out that, although defendant objected to the admission of a photograph of defendant, he did so by contesting the foundation for that evidence. Defendant never contested the admission of either the photograph or any evidence relating to the photographic identification based on the grounds of the photographic identification procedure being "unduly suggestive." "An objection based on one ground at trial is insufficient to preserve an appellate attack based on a different ground." *People v. Asevedo*, 217 Mich.App 393, 398; 551 NW2d 478 (1996). Therefore, defendant failed to preserve this issue. Nevertheless, defendant may avoid forfeiture of this issue, under the "plain error" rule, by showing that: (1) error occurred, (2) the error was plain, i.e. clear or obvious, and (3) the plain error affected substantial rights. *People v. Carines*, 460 Mich. 750, 763; 597 NW2d 130 (1999). Generally, the third requirement requires a showing of prejudice-that the error affected the outcome of the lower court proceedings. *Id.*
>
> Defendant correctly notes that the admission of evidence resulting from an "unduly suggestive" pretrial identification procedure constitutes a denial of due process. *People v. Williams*, 244 Mich.App 533, 542; 624 NW2d 575 (2001). In

>order to challenge an identification procedure, however, "a defendant must show that the pretrial identification procedure was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification." *Id.*, *quoting People v. Kurylczyk*, 443 Mich. 289, 302; 505 NW2d 528 (1993). Here, defendant fails to specify how the photographic lineup was "unduly suggestive." In the absence of any indication that the photographic lineup was "unduly suggestive," we have no basis to conclude that defendant was deprived of due process, much less that plain error occurred.
>
>                          *     *     *
>
>Defendant next asserts that he was denied his right to effective assistance of counsel because his trial counsel failed to request an evidentiary hearing in order to suppress the identification of the defendant. Because defendant did not request a new trial or an evidentiary hearing on this issue, our review is limited to the facts on the record. *People v. Ginther,* 390 Mich. 436, 443; 212 NW2d 922 (1973). Generally, a successful claim of ineffective assistance of counsel requires a defendant to show that his or her attorney's representation deviated from an objective standard of reasonableness, resulting in the denial of a fair trial. *People v. Toma,* 462 Mich. 281, 302; 613 NW2d 694 (2000). There is a strong presumption that counsel's actions constituted sound trial strategy under the circumstances. *Id.* at 302. A defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 302-303, quoting *People v. Mitchell,* 454 Mich. 145, 156; 560 NW2d 600 (1997). However, as shown above, the witness' trial testimony was properly admitted, and a suppression hearing, in all likelihood, would not have been successful. Trial counsel is not ineffective for failing to advocate a meritless position. *People v. Snider,* 239 Mich.App 393, 425; 608 NW2d 502 (2000). Therefore, defendant's ineffective assistance of counsel claim must also fail.

*People v. Gordon*, No. 227620 (Mich. App. March 12, 2002), slip op. at 1-3.

Although the Michigan Court of Appeals referred to Ms. Crowe's trial testimony, that court did not summarize the relevant testimony in its opinion. Ms. Crowe's testimony is summarized as follow. At trial, Ms. Crowe testified that she told police that at about 11:50 p.m. on July 27, 1999, she saw a man conversing with the driver of a car parked across the street from her house. Trial Trans. II at 126-27. She described the man outside the car as "five-nine, six feet, skinny, 140 pounds, very dark complexion" *Id.* at 141. After petitioner was identified as a suspect

in the instant murder, Grand Rapids Police Detective Matt DeJong arranged an identification procedure on July 28 at about 2:00 p.m., during which Ms. Crowe was asked to identify the person she had seen outside the victim's car. Trial Trans. V at 106-07. From a photographic lineup of five black males "similar in appearance" to petitioner, Ms. Crowe identified petitioner as the person "most like the person she saw as talking to the driver," according to DeJong's testimony. *Id.* At trial, Crowe testified that she was "pretty confident" of the January 28th identification of petitioner's photograph. Trial Transcript II at 134. She also testified that the person she saw was "no older than 18, he was about five-ten, dark complected, he had short hair, thin." *Id.* at 130. Later in her testimony, Crowe confirmed that petitioner was the person she identified in the photograph and that he was in fact the person she witnessed outside the victim's car just prior to the murder. *Id.* at 150-51.

### 1.     Standard of review for effectiveness of the assistance of counsel

Criminal defendants have the Sixth Amendment right to reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). Counsel's assistance is ineffective if counsel's client was denied a fair trial because counsel's "conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686-7. To prove ineffective assistance of counsel, petitioner must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Id.*

### 2.     Ms. Crowe's identification of petitioner did not violate his due process rights

Petitioner claims that his counsel should have moved to suppress Ms. Crowe's pretrial photographic identification of the petitioner on the grounds that the lineup was unduly suggestive and therefore in violation of due process.  In *Simmons v. United States*, 390 U.S. 377 (1968), the Supreme Court discussed the benefits and hazards involved in using photographic identification:

> It must be recognized that improper employment of photographs by police may sometimes cause witnesses to err in identifying criminals. A witness may have obtained only a brief glimpse of a criminal, or may have seen him under poor conditions. Even if the police subsequently follow the most correct photographic identification procedures and show him the pictures of a number of individuals without indicating whom they suspect, there is some danger that the witness may make an incorrect identification. This danger will be increased if the police display to the witness only the picture of a single individual who generally resembles the person he saw, or if they show him the pictures of several persons among which the photograph of a single such individual recurs or is in some way emphasized.  The chance of misidentification is also heightened if the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime. Regardless of how the initial misidentification comes about, the witness thereafter is apt to retain in his memory the image of the photograph rather than of the person actually seen, reducing the trustworthiness of subsequent lineup or courtroom identification.
>
> Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly

> suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

*Simmons*, 390 U.S. at 383-84 (footnotes omitted). It is this likelihood of misidentification that violates a defendant's right to due process. *Neil v. Biggers,* 409 U.S. 188, 198 (1972); *Howard v. Bouchard*, 405 F.3d 459, 469 (6th Cir. 2005).

In cases involving this type of alleged misidentification, federal habeas courts must first assess whether the identification was unnecessarily suggestive, then assess whether the identification was nonetheless reliable. *Howard*, 405 F.3d at 469. "Unnecessary suggestiveness generally depends upon whether the witness's attention was directed to a suspect because of police conduct." *Id.* at 470 (internal quotations omitted). The court looks to the circumstances of the pretrial identification, not whether law enforcement officers intended to prejudice the suspect. *Id.* However, if an identification is reliable, it will be admissible even if the confrontation was suggestive, because "reliability is the linchpin in determining the admissibility of identification testimony." *Id., quoting Manson v. Braithwaite,* 432 U.S. 98, 114 (1977).

Matthew DeJong, the police officer who organized and conducted the photographic identification procedure with Ms. Crowe, testified to the circumstances of the pretrial identification:

> At the time I interviewed [Ms. Crowe] in the afternoon of the 28th, which I believe was shortly after 2:00 in the afternoon, we had already developed Deontae Gordon as a suspect in the case.
> 
> We had access to a database of photographs. I put in the characteristics for the database to search for a black male, 16 years old, slim build. It then gives me who knows how many pictures that I can sort through, and I can find photographs that are similar to the defendant.
> 
> I then chose five, including the picture of the defendant, and put them all in a photo-drop with those six color pictures, and I showed that to Allison Crowe...
> 
> <u>She immediately pointed at photo number five, which was Defendant Deontae</u>

<u>Gordon, and she identified him as the personal looking most like the person she saw as talking to the driver.</u>

Trial Trans. V at 106-07 (emphasis added).

On cross-examination, Ms. Crowe positively identified petitioner as the perpetrator:

Q    Do you know Mr. Gordon?
A    No.
Q    So are you telling me and this jury the person you saw with the doo-rag, the white shoes, very dark complexion, is him?
A    Yes.
Q    Is that what you're saying?
A    That is what I'm saying.
Q    You're positive, Allison?
A    Yes.

Trial Trans. II at 151.

There is no evidence that Detective DeJong did anything to prejudice Ms. Crowe's identification of petitioner. For example, petitioner does not allege that the detective in any way emphasized petitioner's photograph in comparison to the other photographs. The five other photographs used in the photographic line-up were selected by a computer based on the results of an extensive search for candidates with characteristics fitting petitioner's general description. Detective DeJong then chose photographs from that sampling that he claims most resembled petitioner. From this display of individuals, Ms. Crowe "immediately" selected petitioner out of the line-up. Her lack of hesitation supporting the accuracy of the identification. In addition, the identification procedure occurred about 14 hours after the eyewitness account took place, when petitioner's appearance was likely still relatively fresh in Ms. Crowe's mind.

Petitioner has failed to show that the identification procedure was unnecessarily suggestive. There was no basis to support a motion to suppress the identification testimony. Under these circumstances, petitioner's counsel was not ineffective for failing to move to suppress Ms. Crowe's identification testimony. "There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." *United States v. Sanders*, 165 F.3d 248, 253 (3rd Cir. 1999). *See Lilly v. Gillmore*, 988 F.2d 783, 786 (7th Cir. 1993) ("[t]he Sixth Amendment does not require counsel . . . to press meritless issues before a court").

The Michigan Court of Appeals' resolution of this issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). Accordingly, petitioner is not entitled to habeas relief on this claim.

### B.    Trial court's denial of petitioner's motion for resentencing

Next, petitioner contends that the trial court deprived him of due process by incorrectly scoring the sentencing guidelines and refusing to conduct a re-sentencing hearing. The record reflects that petitioner was sentenced to 33 to 100 years imprisonment on March 6, 2000. *See* Judgment of Sentence (docket no. 34); Sent. Trans. (docket no. 33). The state court docket sheets reflect that petitioner filed a "motion to recalculate guidelines & resentence" on April 7, 2000. *See* Kent County Circuit Court docket sheet (docket no. 34). The trial judge reaffirmed the sentence of 33 to 100 years and denied petitioner's motion in an opinion entered on April 28, 2000. *See* Opinion (docket no. 34).

The Michigan Court of Appeals addressed petitioner's claim as follows:

> Finally, defendant takes issue with the trial court's denial of his motion for resentencing. Defendant asserts that numerous errors occurred in scoring different variables in order to arrive at his sentencing guidelines. The trial court correctly acknowledged that at least one error occurred during defendant's sentencing. However, the trial court opined that, even if all variables were scored as defendant argues, defendant's minimum sentence would still fall within the corrected guidelines range. More importantly, the trial court noted that it would not change defendant's sentence, notwithstanding the change in the appropriate guidelines range. Specifically, the trial court opined: "Without doubt, this Court would have imposed the same sentence had it been working with Guidelines of 225-468 months. That being the case, this Court need not resentence defendant."
>
> Generally, when it is this Court that finds a scoring error, we remand to the trial court to determine whether it would resentence the defendant to the same sentence under the correct scoring of the variables or to a different sentence. *See People v. Polus,* 197 Mich.App 197, 199; 495 NW2d 402 (1992). However, where, as here, defendant properly requests review of the scoring below, the trial court is afforded an opportunity to make this determination before our review. In other words, our need to remand is obviated by the trial court's prompt attention to the matter. Moreover, defendant's contention that he is entitled to either re-sentencing or a re-sentencing hearing based on the trial court's correction of the appropriate guidelines range is not supported by statute. Simply put, upon correction of the guidelines scoring, defendant was ultimately sentenced under the appropriate sentencing guidelines range, as required by M.C.L. § 769.34(10). In addition, because defendant's sentence remains within the appropriate guidelines range, we are required to affirm defendant's sentence. MCL 769.34(10).

*Gordon*, No. 227620, slip op. at 3-4 (footnotes omitted).

Petitioner's claim fails to raise a federal constitutional issue. Federal habeas review is limited to deciding whether a conviction violated the Constitution, laws, treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "[F]ederal habeas corpus relief does not lie for errors of State law." *Id.* at 67, quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). The state's computation of petitioner's prison term involves a matter of state law that is not cognizable on federal habeas review. *See Kipen v. Renico*, No. 02-1742, 2003 WL 21130033 at *1 (6th Cir. May 14, 2003), citing *Estelle*, 502 U.S. at 68. *See also Austin v. Jackson,* 213 F.3d 298, 300 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas

relief); *Cheatham v. Hosey*, 12 F.3d 211 (6th Cir. 1993) (departure from sentencing guidelines is issue of state law not cognizable in federal habeas review).   Accordingly, petitioner is not entitled to federal habeas relief on this state law claim.

### V.     Conclusion

I respectfully recommend that petitioner's habeas petition be dismissed. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.


Dated:  November 13, 2006                                /s/ Hugh W. Brenneman, Jr.
                                                         Hugh W. Brenneman, Jr.
                                                         United States Magistrate Judge


ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).